# United States Court of Appeals
## For the First Circuit

No. 11-1385

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERT J. VENTI,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Howard, Selya and Thompson,
Circuit Judges.

Ronald W. Bourget, with whom Bourget & Bourget, P.A. was on brief, for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Thomas E. Delahanty, II, United States Attorney, was on brief, for appellee.

July 24, 2012

**HOWARD, Circuit Judge.** After a two-day jury trial, defendant Robert J. Venti was convicted on all counts of a nine-count indictment for theft of government property in violation of 18 U.S.C. § 641 and sentenced to be incarcerated for 15 months on each of the counts, with the sentences to run concurrently. On appeal, Venti argues that one count of the indictment should be dismissed as time-barred. The status of the challenged count is of some significance; without it, the incarcerative term to which Venti could be sentenced is limited to one year, and he would be treated as a misdemeanant rather than as a felon. 18 U.S.C. §§ 641 and 3559(a)(6). After due consideration, we reject the argument in favor of dismissal and affirm the conviction.

## I.

The relevant facts are not controverted. Venti's father was entitled to and received federal Civil Service Retirement System ("CSRS") benefits. Venti's father died on December 17, 1990, an event that should have terminated his benefits. Nonetheless, the Office of Personnel Management ("OPM") continued to deposit the CSRS funds into a checking account that Venti had shared with his father at the Rockland Federal Credit Union ("RFCU") in Massachusetts. In 2003, Venti opened a new joint checking account at RFCU in the names of himself and his father. Venti arranged for the CSRS benefits, as well as his own Social Security benefits, to be deposited in the new RFCU account. In

-2-

October of 2005, OPM learned of the death of Venti's father and stopped depositing the CSRS benefits.

On December 9, 2009, a federal grand jury in Maine, where Venti resides, handed up a nine-count indictment charging him with theft of government property – one count for each of nine checks written in his father's name during 2005. See id. § 641.[1] The jury convicted Venti on all nine counts and returned a special verdict that the aggregate amount of the nine counts exceeded $1,000, subjecting him to imprisonment for longer than a year. Id.; see id. § 3559(a)(3) (classifying such offense as a felony). The district court denied Venti's post-trial motion to dismiss Count One, and this appeal followed.

---

[1] 18 U.S.C. § 641 provides:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys, or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof . . . or whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted – shall be fined under this title or imprisoned not more than ten years, or both; but if the value of such property in the aggregate, combining amounts from all the counts for which the defendant is convicted in a single case, does not exceed the sum of $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

**II.**

It is undisputed that the evidence supported the jury's verdict with respect to the amounts alleged to have been stolen in Counts Two through Nine of the indictment, totaling $807.89. That leaves an amount exceeding $192.11 to be accounted for in Count One in order to surpass the $1,000 felony threshold. Venti contends, however, that the statute of limitations requires the dismissal of Count One.[2] Because the applicable statute of limitations is five years, and the statute begins to run when a crime is complete, Venti must have completed Count One on or after December 9, 2004 for his conviction on that count to be upheld. See 18 U.S.C. § 3282; United States v. Rouleau, 894 F.2d 13, 14 (1st Cir. 1990) ("The statute of limitations for an offense begins to run when the crime is complete.").

At the close of the case, the jury was instructed that it could return a guilty verdict only if the government proved that Venti "committed each of the elements of the crime of theft of government property for each of the nine counts on or after

---

[2] Venti also includes one sentence in the facts section of his brief stating that, "[i]n the alternative, the government failed in the charging instrument to properly reference the 'conversion' of government funds as being within the five year statute of limitations." As he does not advance any argument in support of this assertion, we do not consider it further. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (holding that perfunctory arguments are deemed waived).

-4-

December 9, 2004."[3]  Having been so instructed, the jury necessarily found that Venti committed the offense in Count One on or after December 9, 2004, and thus within the limitations period. See Morales-Vallelanes v. Potter, 605 F.3d 27, 34-35 (1st Cir. 2010) ("A basic premise of our jury system is that the jury follows the court's instructions, and therefore we assume, as we must, that the jury acted according to its charge." (citation and internal quotation marks omitted)).  We will uphold that finding "unless the evidence was so strongly and overwhelmingly inconsistent with the verdict[] that no reasonable juror could have returned [it]." Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009) (quoting Crowley v. L.L. Bean, Inc., 303 F.3d 387, 393 (1st Cir. 2002)).  We review questions of law de novo.  E.g., State Street Bank & Trust Co. v. Denman Tire Corp., 240 F.3d 83, 87 (1st Cir. 2001).

## III.

Count One alleged a conversion of government property by a check for the amount of $330 cashed on January 21, 2005.  The

---

[3] The adequacy of this instruction is not at issue in the specific circumstances of this case.  Writ large, however, the instruction appears to be generous toward the defendant. Ordinarily, if some but not all of the elements of a crime are completed outside the limitations period, prosecution can still proceed so long as at least one of the elements occurred within the limitations period.  See United States v. Walsh, 928 F.2d 7, 11-12 (1st Cir. 1991) (holding that prosecution was only barred by the statute if "the evidence irrefutably established that all elements of the embezzlement were committed" outside the statute).

following bank account activity preceded the January 21 check: a January 3, 2005 deposit of $210 in CSRS benefits brought the balance in the RFCU account to $373.97, and then a January 13 check for $39.74 reduced the balance to $334.23. Thus, the January 21 check for $330 charged in Count One depleted the account of all funds but $4.23.

Venti's basic contention is that Count One charges theft by conversion of $330, but in order for the check to have represented a total of $330 in illegally received funds, it necessarily included CSRS benefits received outside of the limitations period. Count One therefore should be dismissed as stale. He begins by asserting that the date on which the conversion occurred was the date that the CSRS benefits were deposited, not the date that the funds were withdrawn to support the check. Any wrongfully obtained funds deposited before December 9, 2004 were converted outside of the statute of limitations, his thesis runs, and the conversion of those funds is not a "continuing offense" such that the crime may be said to be ongoing after that date. Venti emphasizes that the $210 deposit of CSRS benefits on January 3, 2005 – the only such deposit that is both prior to January 21 and still within the limitations period – was not itself sufficient to cover the $330 check referenced in Count One. Thus, he concludes, in order for the check to have represented the conversion of $330 in CSRS benefits, the check must have been

-6-

partially backed by CSRS funds that had been deposited at an earlier time outside of the limitations period. Because some of the $330 drawn on the Count One check consisted of CSRS funds that were deposited outside of the statute of limitations, Count One should have been dismissed as untimely brought.

The main problem with the argument is that the government did not have to allege or prove that the entire amount necessary to cover the January 21 check derived from CSRS benefits received within the limitations period. The precise value of the property stolen is not a necessary element of 18 U.S.C. § 641. Accordingly, that the face amount of the check identified in the indictment may not precisely match the value of the converted property does not require dismissal. The evidence need only show that the purloined item be a "thing of value." 18 U.S.C. § 641 (prohibiting the theft of a "thing of value"); see United States v. Donato-Morales, 382 F.3d 42, 49 (1st Cir. 2004) (holding that the evidence at trial was sufficient for the jury to conclude that the defendant intended to steal a "thing of value" even without direct evidence that the defendant knew the item's specific value); United States v. Torres Santiago, 729 F.2d 38, 40 (1st Cir. 1984) (holding that § 641 "merely requires the government to show that a thing of value of the United States has been knowingly received, concealed, or retained by the accused with the proper intent."). The verdict form in this case accurately reflects this principle, describing

Count One as "theft of an item of value from the government," and Venti concedes that some of the $330 represented by the January 21 check came from the January 3, 2005 deposit of CSRS benefits, a deposit that was within the limitations period.

We have previously rejected an argument closely analogous to Venti's position that Count One must be dismissed because it does not exclusively relate to money received illegally within the statute of limitations. Where a check that is alleged to be a conversion is drawn on an account containing both legal and illegal funds, we have held that the government need only show that illegal funds constitute a substantial portion of the account's total in order to support a conviction. See United States v. García-Pastrana, 584 F.3d 351, 369-70 (1st Cir. 2009) (interpreting 18 U.S.C. § 669's prohibition of converting health care funds as a close "analogue" to 18 U.S.C. § 641 and affirming the conviction where a "substantial portion" of the account consisted of health care funds). The same rule applies here. Venti's account had only $334.23 available to cover the $330 check. We have no trouble concluding that a reasonable jury could have found that a substantial portion of the account consisted of the $210 in illegally obtained funds that were deposited within the limitations period; the check charged in Count One would have bounced without

that deposit.[4]  Moreover, we note that accepting Venti's position would have troubling implications.  Under his theory, one could always avoid conviction simply by writing a check in any amount greater than the sum of illegally obtained benefits in an account, in effect using the commingled funds as a shield.  We reject this conception.

**IV.**

The conviction is **affirmed.**

---

[4] Venti does not argue that the jury was prohibited from finding that more than $192.11 of the $330 in funds drawn on January 21 came from the $210 January 3 CSRS deposit, nor does he allege a prejudicial variance in the proof between the drawing of the $330 check charged in the indictment and the $210 deposit that supplied some of the funds for the check.  Accordingly, even accepting, arguendo, the premise that a conversion occurs when a CSRS deposit is made, see United States v. Miller, 520 F.2d 1208, 1210 (9th Cir. 1975) (upholding a § 641 conviction where defendant deposited a government check into his personal account), the evidence in any event supports the jury finding that the $1,000 threshold was met.